JUSTICE WEBER
dissents as follows:
I dissent from the conclusion of the majority opinion that the claimant proved by a preponderance of credible evidence that he had no reasonable prospect of employment in his normal labor market. As a result I also dissent from the judgment of the majority that claimant is entitled to a “reinstatement” of total disability benefits retroactive to December 8,1982.
The majority has confused the issues by holding that claimant is entitled to a reinstatement of his total disability benefits retroactive to 1982. The only total disability benefits which claimant has received are temporary total disability benefits which the majority agrees were properly terminated on December 8, 1982. Claimant also received permanent partial disability benefits from December 8,1982 to November 18, 1987. As a result, there are no total disability benefits to be “reinstated.”
The contradictions I find are best illustrated by comparing this case to Wood v. Consol. Freightways, Inc. (1991), 248 Mont. 26, 808 P.2d 502, which is the key case used by the majority to reach its conclusions. The analysis of the majority using Wood as its foundation was neither presented nor argued by the parties. In Wood the appeal involved the termination of the worker’s temporary total disability benefits and the award of permanent partial disability benefits. The appeal was taken from that determination. This Court reversed the lower court. Contrast this to the present case where the temporary total disability benefits were terminated on December 8, 1982 and partial disability benefits commenced on the same date. No appeal was taken from the termination of temporary total benefits or the granting of permanent partial benefits. Here, the claimant waited *342 more than six and one-half years before raising any issue. The issue was raised by a petition claiming a right to permanent total disability benefits which was filed after the partial disability benefits had expired. I emphasize this because of the essential unfairness of the presentation of an issue grounded on facts, including medical facts which took place almost seven years prior to the filing of the petition. The contrast between this case and Wood is that all parties in Wood had a reasonable opportunity to present their questions of both fact and law upon an appeal from the 1982 determination. Here, that was not done, and the absence of that procedure has been disregarded by the majority.
The next contrast between this case and Wood is that the majority in Wood pointed out there was substantial credible evidence to support a finding that Wood was unable to return to his normal labor market, emphasizing that three out of four physicians concluded that Wood could no longer perform the heavy physical labor employment he had performed. Thus, claimant had met his burden of demonstrating “no reasonable prospect of employment” in his labor market. In contrast, as will be subsequently emphasized in our review of the facts, in this case the substantial evidence is to the contrary, with very limited evidence submitted on the part of the claimant — and most important, with a failure on the part of the claimant here to meet the evidentiary standard which was to be applied in his case.
In reaching his conclusion that claimant was not entitled to permanent total disability benefits, the Hearing Examiner made extensive findings and conclusions. Of significance are the following findings with regard to the date of injury and dates of claim.
5. Defendant accepted liability for claimant’s injury and paid temporary total disability benefits from October 15,1981 through December 8, 1982. At that time such benefits were converted to permanent partial disability benefits. (Uncontested fact No. 4) Claimant took no action regarding such conversion for approximately six and one-half years, until he filed the petition herein on June 28, 1989.
6. Claimant’s permanent partial disability benefits were terminated on November 18,1987. (Id) Claimant did not question the termination of such benefits for approximately one and one-half years, until the filing of this petition. (Emphasis added.)
The Hearing Examiner concluded there was no dispute between the parties that the claimant’s entitlement to temporary total disability *343 benefits ended when maximum healing was reached on October 19, 1982. Nonetheless the majority remands to the lower court with instructions to “reinstate claimant’s total disability benefits retroactive to December 8, 1982.” This is a contradiction in terms. The only total disability benefits which could have been “reinstated” are the temporary total benefits.
The Hearing Examiner set forth the following standard of proof which was to be applied in this case:
The claimant must prove, by a preponderance of the credible evidence, that he has no reasonable prospect of employment in his normal labor market....
To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work related injury...
In holding that claimant demonstrated an inability to return to his prior occupations, and therefore met the initial test of Wood, the maj ority did not analyze the findings and conclusions of the examiner and the court. The examiner made extensive findings of fact which included the following:
3. Claimants prior work histoiy consists of work as a deliveiy person, store clerk, forest service employee, hod carrier, structural iron worker, wireman, welder, maintenance engineer and boilermaker....

Medical Evidence

7. Claimant’s treating physician for his low back condition has been Dr. James P. Murphy....
9. Dr. Murphy regularly treated the claimant as he improved to a point that Dr. Murphy reported that the claimant had reached maximum healing as of October 19,1982 and rated his permanent partial impairment as twenty-five percent of the whole person.
10. Claimant did not return for treatment from Dr. Murphy for five years after the October 19,1982 visit. On September 9,1987, Dr. Murphy examined the claimant and found him to be essentially the same as he was at the October 19,1982 examination....
*344 12. Claimant was last examined by Dr. Murphy for his back condition on July 10, 1989, for purposes of a disability evaluation for Social Security purposes. As a result of this examination, Dr. Murphy wrote to Dr. William Hoopes at the Disability Determination Bureau stating “I think he may be able to return to some type of work, but it would certainly have to be light-duty profile.” In such letter Dr. Murphy also stated: “I do think he should be restricted from any prolonged bending, crawling, stooping or heavy lifting.”
13. On August 30, 1989, Dr. Murphy met with Michael Anderson, a certified rehabilitation counselor. Dr. Murphy filled out a physical capacities form in which he stated that the claimant could return to light-duty work at that time, but starting out part-time. He released the claimant to return to work as a sewing machine operator and a parking lot attendant....
15. There is no medical evidence relating any of the claimant’s other physical difficulties, except for his low back problems, to his industrial injury of October 14,1981.
It is important to note that the July 10, 1989 examination by Dr. Murphy was for Social Security disability evaluation purposes, and not specifically for workers’ compensation purposes. There is no medical evidence relating any of the claimant’s other physical difficulties, except for his low back problems, to his industrial injury of October 14,1981. The findings of the Hearing Examiner included the following:

Vocational Evidence

16. Claimant retained Ian Steel, a vocational rehabilitation consultant, who interviewed the claimant and read the depositions and transcript of this case. He reviewed the medical records and the vocational consultant’s report of Michael Anderson....
17. Mr. Steel concluded that, at this time with the claimant’s physical limitations, it would be difficult to place the claimant in employment which limits him to very light work. At sixty years old, retraining was not feasible and Mr. Steel concluded that the claimant is basically unemployable at this time....
18. On cross-examination, Mr. Steel conceded that claimant could perform the job of a dispatcher assuming that he could find a job opening....
*345 19. Looking back to claimant’s maximum healing date of October 19,1982, Mr. Steel testified as follows:
Q. In other words, if in Mr. Ness’s cases he tried to go back to work back when he reached maximum healing, it would be a lot better situation than it would be attempting something, for example, now.
A. Definitely. (Emphasis added.)
20. Claimant has failed to prove, by a preponderance of the credible evidence, that he has no reasonable prospect of employment in his normal labor market.
21. Claimant is employable and has been employable since the time he was determined to have reached maximum medical improvement on October 19, 1982. Specific positions have been approved by Dr. Murphy, claimant’s treating physician. No other medical evidence was presented by the claimant to dispute his medical opinions.
22. Michael Anderson’s report concludes that the positions appraised by Dr. Murphy and within the capability of the claimant include sewing machine operator, inspector, radial arm or power saw operator, parking lot attendant, picture framer or dispatcher.]
In his conclusions of law, the Hearing Examiner stated as follows:
The claimant’s normal labor market consists of those jobs at which he has already worked and any other jobs for which his prior formal education and vocational experience, when coupled with his age and physical condition, directly qualify him....
Applying the above criteria to claimant’s situation, it is clear that the medical evidence and preponderance of the vocational evidence support the conclusion that the claimant does have employment opportunities as a sewing machine operator / inspector, a radial arm or power saw operator, a parking lot attendant or a receptionist at a car rental agency. Even claimant’s rehabilitation counsellor, Mr. Steel, admitted that the claimant could probably perform the job of dispatcher. His concern about the actual availability of jobs in Butte is not a valid concern. The test is whether a job exists in the market and whether the claimant can perform that job.

Claimant has failed to meet his burden of proving by a preponderance of the credible evidence that he is entitled to permanent total disability benefits retroactive to October 19, 1982.

*346 Claimant’s counsel did not raise the issue as to what, if any, permanent partial disability benefits the claimant may be entitled and this decision does not consider that issue. (Emphasis added.)
It is at this point that I strongly disagree with the majority conclusion. I would hold that the examiner established the proper standard of proof to be applied. I would further hold that there clearly is substantial evidence to support the findings of the examiner and the court. Because of that analysis of the facts, we would not even get to the Wood analysis which was relied upon by the majority, because the precondition to the application of the Wood tests is the proof that the claimant was unable to return to his normal labor market.
The majority states that claimant demonstrated an inability to return to his prior occupations based on the testimony of Dr. Murphy which precluded activities such as heavy lifting, bending, stooping, or crawling. That disregards the conclusion of the examiner that there were a number of jobs which claimant could perform, including a job such as a dispatcher. It is also significant to emphasize that even the claimant’s expert conceded that if claimant had tried to go back to work in 1982 rather than seven years later in 1989, there would have been a much better situation for attempting other types of work. I, therefore, emphasize Findings 20 through 22 where the examiner in substance had concluded that claimant had failed to prove that he had no reasonable prospect of employment in his normal labor market, and that he was employable on October 19, 1982. At that point the Hearing Examiner correctly concluded that claimant had failed to meet his burden of proving by a preponderance of credible evidence that he was entitled to permanent total disability benefits. At that point, the majority takes a unique twist. Instead of discussing at length the evidence showing whether or not claimant had met the tests properly promulgated by the examiner, the majority almost casually concluded that claimant had proved he had no reasonable prospect of employment in his normal labor market and then proceeded to apply the four part test established in Wood. In Wood it was appropriate to suggest that the burden should shift to the insurer and to analyze the evidence submitted by the insurer as being insufficient to meet the burden placed upon the insurer. That was of course not true here where no appeal was taken from the original determination. Now, close to seven years after the determination by the Workers’ Compensation Court, claimant filed his petition and relief is granted to him because the insurer failed to present evidence on a theory not presented at the time of the 1982 hearing, not *347 considered by appeal from that determination in 1982, and adopted by this Court a number of years subsequent to the 1982 determination. I conclude that is essentially unfair to all parties.
I again emphasize that the majority has incorrectly stated that it requires the Workers’ Compensation Court to “reinstate” claimant’s total disability benefits retroactive to December 8, 1982. There are no such benefits to be reinstated.
I would affirm the conclusion of the Workers’ Compensation Court that claimant has failed to meet his burden of proving by a preponderance of credible evidence that he is entitled to permanent total disability benefits retroactive to October 8,1982.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY concur in the foregoing dissent.